IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-00870-DDD-NRN

PRAIRIE WALK CONDOMINIUM ASSOCIATION,
Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY, a corporation,
Defendant.

_____

**MOTION TO QUASH OR MODIFY SUBPOENA**
_____

IMPACT CLAIM SERVICES, LLC, by and through counsel, Underhill Law, P.C., third-party witnesses who have received a subpoena for records from Defendant the American Insurance Company, respectfully requests that this Court ORDER that Impact shall comply with the subpoena on or before December 5, 2022 and that American Insurance Company be ordered to pay a portion of Impact's costs of compliance with the subpoena served by American Family under Rule 45(d)(1) and (2).

**CERTIFICATE OF CONFERRAL**: Counsel have conferred. This motion is opposed.

**SUMMARY OF ARGUMENT**

American issued a subpoena requiring Impact Claim Services to comb through all of its paper and electronic records and produce not just its public adjuster file but also all correspondence or other documents related to the parties in this case or the claim. This requires Impact, a small company, to dedicate time to locating and collecting those documents and then reviewing them for possible privilege or confidentiality prior to disclosure. American is required to avoid undue

1

burden which is measured by whether there was a "significant expense" associated with the subpoena compliance. Both the scope of the work involved in responding and the disruption to Impact's schedule cause both an undue burden and a significant expense here.

American's obligation may be mitigated, but not eliminated, if Impact is considered an "interested party." If so, then this Court has discretion to apportion the costs of compliance among Impact and American. In a prior case dealing with the same issue, Magistrate Hegarty and Senior Judge Krieger decided that it was fair for an insurance company to pay 2/3 of the cost of Impact's compliance with the subpoena. *See Minute Order*, 17-cv-01773-MSK-MEH; *Opinion and Order Overruling Objections, Hiland Hills Townhome Owners Association v. Owners Insurance Company*, United Stated District Court for the District of Colorado Case No. 17-cv-01773-MSK-MEH (affirming same).

Impact would prefer to bring a motion to apportion costs after it has produced records because then the total cost of compliance would be known. However, Judge Martinez recently took a different view of the Rule. *See Order Denying Motion for Order Requiring American Family to Pay Costs of Compliance with Subpoena*, Blueberry Hill Home Owners, Inc. v. American Family, United Stated District Court for the District of Colorado Case No.1:21-cv-00378. Under the *Blueberry Hill* approach, the "significant cost" mandatory award only arises under 45(d)(2) and so Impact must file a motion to quash or modify before compliance to preserve the argument.

**FACTUAL BACKGROUND**

Impact Claim Services is a public adjusting company hired by the policyholder Prairie Walk. Impact Claim Services put together a detailed, comprehensive claim presentation including its conclusion and supporting information which was provided to American during the claims

2

process and included essentially all of the claim handling information. Despite having this, American served a subpoena on Impact going beyond the claim presentation. It essentially sought all records in Impact's possession related to the policyholder or the claim, including the raw and native versions of information already provided in the claim presentation, non-material correspondence, copies, work product, and other information. *See Subpoena* (**Exhibit 1**).

Impact does a complete and careful job in responding to subpoenas, but this takes time and effort. Impact prides itself on doing a thorough job investigating the underlying claim and trying to help the carrier understand the claim in detail to avoid bad faith delays or denials. On larger claims, particularly where the carrier refuses to timely and properly adjust, this means that tens of thousands of documents can be generated by Impact. The relevant information and reports are typically included in the claim presentation, but many other documents are irrelevant to the claim presentation, such as e-mails coordinating meetings, and are not. Impact does not approach each claim assuming that the carrier will refuse to pay in bad faith, litigation will result, and a subpoena will be served, so it does not incur the cost of preparing for a future subpoena when one may never be served during Impact's day to day work. Its work on the claim is instead focused on packaging the relevant material in an easy-to-produce claim presentation.

Impact's records, additionally, can include information protected by its own interests or those of its customer. Impact's internal work products and native documents can contain trade secret information about Compass' internal processes and policies on adjusting claims, identities of employees, vendors, experts, engineers, and other information that should be disclosed to Impact's competitors. Insurance companies like American are competitors, too, because they often take adverse positions to Impact due to their interest in minimizing the amount paid on insurance

claims and would be able to exploit knowledge of Impact's process in future disputes. In addition to that, Impact has to check for financial and tax information, account numbers, social security numbers, and other confidential information.

Finally, Impact must respect the rights of its customers. It needs to review documents to ensure they do not violate some other customer's privacy, as can occur if an internal e-mail among Impact's employees refers to more than one customer. It also needs to be careful with respect to documents involving an attorney representing the customer. The customer may have attorney-client privilege with respect to such communications if they constitute a communication by the customer, through its independent contractor, for the purpose of obtaining legal advice.

Not every document requested by a subpoena is confidential or privileged, of course, but Impact must incur significant expense to review them to make this determination. Where, as here, the insurance carrier demands production of information beyond the organized claim presentation, that work is unavoidable.

Impact timely objected to the short time frame of the subpoena and of being forced to comply without payment of its reasonable costs of compliance. *See Letter from Underhill Law*, at p. 1-2, Aug. 17, 2022 (**Exhibit 2**). American did not agree to pay costs of compliance or offer any way, such as use of a third party, to mitigate the burden of the subpoena. American also demanded faster compliance. *Letter from Spencer Fane* Sept. 28, 2022 (**Exhibit 3**). Impact continued to object. *Letter from Underhill Law*, Oct. 13, 2022 (**Exhibit 4**).

To comply with the subpoena, Impact has to dedicate hours of time from its principal, Derek O'Driscoll, and its counsel, Underhill Law, to locate the relevant information, compile and organize it, review for confidentiality and privilege, and then bates stamp and produce the same.

Mr. O'Driscoll spent 26 hours searching, reviewing, and preparing documents for production. Since Mr. O'Driscoll is also the primary employee of Impact, it must carefully allocate his time well in advance to ensure that the search and production do not interrupt deadlines or appointments for other customers. The time spent by Mr. O'Driscoll and the attorney fees related to the production on similar subpoenas served by Defendant's counsel typically cost between $5,000 and $15,000.00 depending on the size of the claim file.

## ARGUMENT

I.   **AMERICAN SHOULD PAY IMPACT'S REASONABLE COMPLIANCE COSTS.**

Under the current version of Rule 45, it is mandatory for American Family to protect Impact from "significant expense" related to a subpoena. C.R.C.P. 45(d)(1); *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.C.Cir. 1992). While prior versions of the rule may have required a nonparty to absorb the costs of compliance, since 1991 that is no longer true. *First Am. Corp. v. Price Waterhouse, LLP*, 1884 F.R.D. 234, 240 (S.D.N.Y. 1998). The expense that Impact incurred, over $13,000.00 was significant. *See Linder v. Calero-Portcarrero,* 251 F.3d 178 (D.C.Cir. 2001) (noting that $9,000.00 is significant); *United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S.Dist.LEXIS 146403 (E.D.Mich. 2012) (around $14,000 is significant).

This Court has been very clear that the award of costs of compliance is <u>mandatory</u>:

It is the Court's obligation to protect any person who is not a party to the underlying lawsuit from significant expense resulting from the inspection and copying which was commanded pursuant to Rule 45. Fed. R. Civ. P. 45(c)(2)(B). **The rule is mandatory**. *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed Appx. 880, 882-83 (3rd Cir. 2002). The "court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"

5

*Crandall v. City & Cty. of Denver, Colo.,* 2007 U.S.Dist. LEXIS 96770, *2-3 (D. Colo. Jan. 17, 2007)) (emphasis added). *See also United States v. McGraw-Hill Cos*., 302 F.R.D. 532, 535 (C.D.Ca. 2014) ("Rule 45 was amended to make cost-shifting a matter of course").

Both lost earnings and attorney fees are specifically identified as awardable. "[L]ost earnings" are properly awarded under F.R.C.P. 47(d)(1). To comply with the subpoena, Impact has to incur significant expense. Mr. O'Driscoll has to set aside time dedicate to collecting responsive documents. Then, he then has to convert them to PDF format and sort them. He also has to check which records he should flag as possibly confidential or protected, and for Prairie Walk, his customer, to review for possible assertion of its own attorney-client privilege. During the time Mr. O'Driscoll is doing this work, he was unable to put his time towards new, paying clients. His hourly rate is $375.00.

Attorney fees are also properly awarded under F.R.C.P. 45(d)(1). Once collected, Impact has to provide the information to counsel who had to consider, in conjunction with Impact, whether any of the documents contained information about other Impact customers, revealed Impact's trade secrets, violated confidentiality agreements, or are otherwise confidential. The documents are then bates stamped and produced alongside a disclosure statement. Due to the massive size of the files, the production typically requires purchasing multiple hard drives to mail out. American will be the beneficiary of all of this hard work. They will be given a well-organized, standardized, bates-stamped set of documents which they can immediately use for their litigation purposes.

The cost to Impact of complying with a subpoena like this varies but is usually under $15,000.00. While this is significant, it is hardly unreasonable. *See Expert Opinion of Erin Perczak* (**Exhibit 5**). As Mr. Perczak explained in the same context in a prior dispute involving Impact

6

seeking recovery of its costs of compliance with a similar subpoena, the cost per gigabyte for an e-discovery company to ingest and produce documents alone totals $185 per gigabyte. *See id* at p. 4. By doing the work in-house, Impact is able to complete the work for significantly less than the amount such a third party would charge.

In addition to its lost earnings and attorney fees to comply with the subpoena, Impact is being forced to incur additional fees to file this motion. Rule 45(c)(1) does not limit the fees that a witness can recover to any work in particular. Instead, all fees resulting from the subpoena are potentially covered. The Supreme Court has noted that "fee-shifting statutes – favor[] treating a case as an inclusive whole, rather than as atomized line-items" and has warned that "denying attorneys' fees for time spent in obtaining them would dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees[.]" *Comm'r Jean*, 496 U.S. 154, 162 (1990). And, in the Tenth Circuit, an award of reasonable attorney fees "may include compensation for work performed in preparing and presenting the fee application." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986), *cited more recently by South Wind Women's Ctr, LLC v. Stitt*, 2012 U.S.Dist. LEXIS 159175, *23 (W.D.Okla. 2021).

Impact cannot yet itemize the fees related to compliance or this briefing because, after all, they have not yet been fully incurred. However, Impact can provide a supplementary affidavit of attorney fees and costs once its entitlement to such recovery is determined.

II.     **IMPACT BRINGS ITS MOTION NOW DUE TO CONFLICTING AUTHORITY.**

Impact would prefer to wait to bring a motion seeking payment of its fees until only after it has complied. That was the procedure that was used by Magistrate Hegarty and Senior Judge Krieger in awarding Impact its costs of compliance on a similar subpoena. *See Minute Order*, 17-

cv-01773-MSK-MEH; *Opinion and Order Overruling Objections, Hiland Hills Townhome Owners Association v. Owners Insurance Company*, United Stated District Court for the District of Colorado Case No. 17-cv-01773-MSK-MEH (affirming same).

However, Judge Martinez recently took a different view of the Rule. *See Order Denying Motion for Order Requiring American Family to Pay Costs of Compliance with Subpoena, Blueberry Hill Home Owners, Inc. v. American Family*, United Stated District Court for the District of Colorado Case No.1:21-cv-00378. Under the *Blueberry Hill* approach, the "significant costs" test only applies if Impact brings a motion to quash or modify before compliance and this Court orders production under 45(d)(2). Judge Martinez suggests that if Impact waits until after it complies, then it must seek relief only under Rule 45(d)(1) and then it can only request payment of "undue" burdens as opposed to "significant" costs. In other words, Judge Martinez has told Impact that it must object to the subpoena before production to trigger the mandatory language to avoid "significant expense" under Rule 45(d)(2).

**III.  AMERICAN SHOULD PAY 2/3 OF IMPACT'S COSTS OF COMPLIANCE.**

Counsel for American takes the position that the authority making payment of costs to a third party is inapplicable here because Impact is an "interested party." That is mostly wrong.

To begin with, cases in the Tenth Circuit are not unanimous on what makes a witness an "interested party" to litigation. Under *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 623 (10th Cir. 1981), the Tenth Circuit held that whether a witness is an "interested party" is relevant but does not hold that everyone with a connection to a party is necessarily interested. Other cases suggest that "interested party" is intended more to mean a party that somehow benefitted from the wrongful conduct being alleged

8

by the plaintiff. *See Western Convenience Stores, Inc. v. Suncor Energy U.S.A., Inc.*, 2014 U.S.Dist. LEXIS 42443 (D.Colo. 2014) (magistrate Shaffer presiding); *United States v. Blue Cross Blue Shield of Michigan*, 2012 U.S. Dist. LEXIS 146403 (E.D.Mich. Oct. 11, 2012); *In re Mushroom Direct Purchaser Antitrust Litigation No*. 06-0620, 2012 U.S. Dist. LEXIS 12319 at *7 (E.D.Pa. Jan. 31, 2012). Similarly, courts find that where a witness is a party in a related case, they may be "interested." *In re Michael Wilson & Partners, Ltd*., 2012 U.S. Dist. LEXIS 72963, *27 (D.Colo. 2012).

If Impact is an interested party, that does not mean that it cannot be compensated for the burden of the subpoena. Instead, it only allows this Court to apportion the cost between American and Impact *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 622 (10th Cir. 1982); *Sunco, supra* at *103; *Michael Wilson, supra* at *29; *See also Lambland, Inc. v. Heartland Biogas, LLC*, 2019 U.S. Dist. LEXIS 198426, *8 (Nov. 15, 2019). In the absence of such a finding, American would have to pay the entirety of the costs of compliance as required by Rule 45. *See Petroleum Products*, 669 F.2d at 623-4 (requiring requesting party to pay all costs where subpoenaed party was "performing no work that could conceivably inure to its benefit").

The factors identified by *Exxon Valdez* weigh in favor of requiring American to pay a fair portion of the costs of compliance. American is a large insurance company with vast resources. Impact is a small, closely held company that helps policyholders obtain proper adjustments when carriers like American refuse to do so. The disparity between the parties is extremely vast. Worse, as a public adjuster, Impact is a potential target for American and other insurance company

subpoenas in the future. An order allowing American to shift the entire burden of production onto Impact amounts a weapon that American and other carries can wield against Impact.

The only case in this Court to reach the issue of how to apportion costs between a Impact and insurance companies who serve a subpoena is *Hiland Hills*. In that case, after taking into account the argument that Impact was an "interested party," the Chief Judge approved a split requiring the insurance company to pay 2/3 of the cost of compliance. There is no reason for any different split in this case.

### IV.   AMERICAN DID NOT TAKE STEPS TO AVOID UNDUE BURDEN.

American did not take steps to avoid burden on Impact. Initially, as discussed above, it demands that Impact incur the lost earnings and attorney fees related to the subpoena itself. As explained above, that cost is significant.

Second, American did not agree to allow Impact a reasonable time to comply with the subpoena. Counsel for American represents numerous insurance companies and has subpoenaed Impact in the past. It knows that Impact typically requires several months' of lead time to ensure that time can be set aside for the production project. But, it has refused to allow Impact the time it requested and forced the filing of this Motion. This was unreasonable.

It was made worse by the fact that American is forcing Impact to file a motion on the eve of a compliance deadline that Impact has already agreed to meet. By the time the briefing is completed, the issue is likely to be moot anyway because the proposed compliance date is only few weeks away. If American truly was prejudiced by the time table given by Impact, it would have moved earlier. Instead, it has insisted on performance at the last minute only to require Impact to pay fees to file this Motion.

# CONCLUSION

WHEREFORE, Impact Claim Services requests that this Court QUASH or MODIFY the subpoena served by American to require compliance on or before December 5, 2022;

AND FURTHERMORE, Impact Claim Services requests that this Court ORDER that American Family shall pay to Impact 2/3 all lost earnings at Mr. O'Driscoll's hourly rate and attorney fees and costs related to the issues raised in this motion or briefing and proceedings resulting from the same.

DATED:  November 10, 2022:	**UNDERHILL LAW, P.C.**

*/s/ Colin E. Moriarty*
Colin E. Moriarty, #36865
7350 East Progress Place, Ste. 110
Greenwood Village, Colorado 80111
Phone: (303) 721-7112

**COUNSEL FOR IMPACT CLAIM SERVICES, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on November 10, 2022, I caused a true and correct copy of the foregoing **MOTION TO QUASH OR MODIFY SUBPOENA** to be sent via e-mail with notification addressed to the following:

*Counsel for Plaintiff*
*Prairie Walk Condominium Association.:*
Christopher N. Mammel, Esq.
**MERLIN LAW GROUP-DENVER**
222 Lakeview Ave., Ste. 1250
West Palm Beach, FL 33401
Email: cmammel@merlinlawgroup.com

*Counsel for Defendant*
*The American Insurance Company:*
Nathaniel Barker, Esq.
Spencer Fane, LLP
1700 Linconl St., #2000
Denver, Colorado 80203
Email: nbarker@spencerfane.com

:

                                                                                              /s/Melissa Rolli
                                                                                             FOR UNDERHILL LAW, P.C.