UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00870-DDD-NRN

PRAIRIE WALK CONDOMINIUM ASSOCIATION,

      Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY,

      Defendant.

---

**DEFENDANT'S RESPONSE TO THIRD PARTY IMPACT CLAIM SERVICES, LLC'S MOTION TO QUASH OR MODIFY SUBPOENA**

---

Defendant The American Insurance Company ("TAIC") respectfully requests that the Court deny third party subpoena recipient Impact Claim Services, LLC's ("Impact") November 10, 2022, Motion to Quash or Modify Subpoena (the "Motion," ECF 30), and states:

## INTRODUCTION

Impact has already received over $331,000 for public adjuster services provided to Plaintiff, including for "litigation assistance." Not only does Impact seek a double recovery of fees for its work in responding to TAIC's subpoena, and thus further enrich itself for its work as Plaintiff's public adjuster, but also the $5,000 to $15,000 it claims in will incur in responding to the Subpoena is "non-significant" by comparison. Even if the Court disagrees, however, and finds that Impact's Subpoena-related costs are significant, the multi-factor analysis the Court should apply—and which Impact does not fully address—weighs against a cost-shifting award.

The Court should therefore deny the Motion.

## FACTUAL BACKGROUND

This lawsuit arises out of a dispute regarding the value of Plaintiff Prairie Walk Condominium Association's hail damage claim under a commercial property policy issued by TAIC related to a storm that occurred on July 16, 2018. On October 4, 2018, Plaintiff hired Impact to act as Plaintiff's public adjuster with respect to that claim. (*See generally* Impact's Public Adjuster Contract, Oct. 4, 2022 (the "Contract," attached as Exhibit A to this Response).) As Plaintiff's counsel recently represented and as set forth in the Contract, Impact conducted virtually all claim activities on Plaintiff's behalf, and Plaintiff disclaims virtually any direct knowledge of or direct participation in those activities. (*See id.* at TAIC_009675 ¶ 1.)

Services Impact agreed to provide Plaintiff include "litigation assistance." (*Id.*) In exchange for its "litigation assistance" and other services, Impact is entitled to a contingency fee of 15% of all amounts TAIC pays Plaintiff, and the fee is payable as partial payments are received. (*See id.* TAIC_009675 ¶ 2(a).) TAIC has paid Plaintiff a total of $2,210,339.71 in benefits. (*See* Sch. Order (ECF 24) at 12, Undisputed Fact ¶ 6.) Therefore, Impact has already received $331,550.96 as fees for its public adjuster services.

Because Impact performed virtually all claim activity on Plaintiff's behalf, TAIC served on Impact a subpoena for documents and communications related to Plaintiff's property damage claim. (*See generally* Mot. Exh. 1 (Subpoena to Produce Documents, July 26, 2022) (the "Subpoena," ECF 30-1).) The Subpoena required Impact to respond by August 17, 2022.

On the due date, Impact's counsel for the first time contacted TAIC's counsel and asserted objections, including claiming that Impact could not possibly respond until December 5, 2022—over three-and-a-half months after the response deadline—and demanding that TAIC pay

Impact an unstated amount (perhaps up to $15,000) to compensate Impact for its Subpoena-related costs. (*See generally* Mot. Exh. 2 (Moriarty Letter, Aug. 17, 2022) (ECF 30-2).)

On August 26, 2022, Impact's and TAIC's counsel conferred via telephone regarding Impact's objections. Then, in a September 20, 2022, letter, TAIC's counsel stated that it was amenable to a reasonable extension, but not one of about four months after service, particularly given the January 20, 2023, deadline to complete discovery. (*See* Mot. Exh. 3 (Barker Letter, Sept. 28, 2022) at 1 (ECF 30-3). TAIC's counsel also noted that Impact has already received nearly a third-of-a-million dollars for its work, including litigation-related services. (*See id.* at 2.)

After additional conferral, Impact filed the Motion. It still has not responded to the Subpoena.

**ARGUMENT**

I.  **IMPACT HAS ALREADY RECEIVED OVER $331,000 FOR ITS WORK ON PLAINTIFF'S CLAIM, INCLUDING ITS "LITIGATION ASSISTANCE"**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts should award "lost earnings and reasonable attorney's fees" to avoid such undue burden or expense. *See id.* But Impact has already been compensated for its litigation-related work by the $331,550.96 it has already received under the Contract, which expressly requires Impact to provide "litigation assistance." (*See* Exh. A (Contract) at TAIC_009675 ¶ 1.) In truth, Impact seeks a double recovery of fees for its Subpoena-related work.

None of the cases cited by Impact permits a double recovery or addresses the context where the subpoenaed third party is already being compensated for its "litigation assistance." To

3

the contrary, those cases generally acknowledge that courts retain significant discretion to award only some subpoena-related expenses, or even none at all. For example, the D.C. District Court has stated:

> "[P]rotection from significant expense" does not mean that the requesting party necessarily must bear the *entire* cost of compliance, particularly where, as here, doubt has been cast on the subpoenaed party's status as a non-party. While the drafters of Rule 45 clearly intended to expand the protection for non-parties such as disinterested expert witnesses, . . . there is no indication that they also intended to overrule prior Rule 45 case law, under which a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it. . . . Under that case law, it is relevant to inquire whether the putative non-party actually has an interest in the outcome of the case. . . .

*In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (emphasis in the original).

Additionally, as the D.C. Circuit noted in one of the cases cited by Impact, if the expense associated with responding to a subpoena in "non-significant," the party serving the subpoena need not bear any expense. *See Linder v. Calero-Portocarrero*, 251 F.3d 173, 182 (D.C. Cir. 2001). Here, the estimated $5,000 to $15,000 Impact will incur is "non-significant" compared to the over $331,000 it has already received in fees under the Contract.

Impact incorrectly posits that responding to the Subpoena is not contemplated by the Contract because Impact "does not approach each claim assuming the carrier will refuse to pay in bad faith"—an allegation that TAIC denies and that has not been found by a court of competent jurisdiction—"litigation will result, and a subpoena will be served, so it does not incur the cost of preparing for a future subpoena when one may never be served. . . ." (Mot. at 3.) This protestation rings hollow for at least three reasons.

First, the Contract indisputably contemplates litigation by requiring Impact to provide

4

"litigation assistance." (*See id.* at TAIC_009675 ¶ 1.) While it is true that not every claim on which Impact acts as an insured's public adjuster will result in litigation, Impact and Plaintiff agreed that, if this one did, Impact's fee would cover any litigation-related work. (*See id.*) Impact cannot reasonably accept a fee for litigation assistance, on the one hand, and then disclaim that it anticipated actually providing such assistance, on the other.

Second, the same can be said of any of the services Impact is obligated to provide under the Contract. The Contract contemplates that Impact will provide services that:

> may include, but may not be limited to the: preparation and presentation of the Claim; documentation of the damages and losses, coordinating and communicating with necessary experts or professionals for preparation of such documentation, presentation of any required claim form of [sic] "Sworn Statement in Proof of loss," and any other measures deemed necessary by [Impact] to settle or otherwise resolve the Claim on behalf of [Plaintiff].

(Exh. A (Contract) at TAIC_009674 ¶ 1.) Just like Impact will not respond to a subpoena in every claim for which it provides public adjuster services, it also will not conduct each and every one of these listed activities for every claim, and it will conduct some activities not listed in this paragraph for at least some claims. Impact's fee nevertheless compensates it for all activities it conducts, regardless of whether it conducts all activities set forth in this paragraph or none of them. (*See id.* at TAIC_009675 ¶ 2(a).) The Contract does not require Impact to return any portion of the fee if it does not conduct some of these activities or apportion the fee among the various listed activities. (*See id.*) Impact gets its 15% regardless of the effort it expends or the tasks it performs.

Third, Impact is frequently involved as a non-party in litigation arising out of claims on which it acted as an insured's public adjuster. In those cases, it invariably receives and responds

5

to subpoenas, and its representatives provide deposition testimony. It is disingenuous for Impact to feign surprise at receiving the Subpoena and disclaim its contemplation of receiving one in this case.

Simply put, Impact has already been paid to respond to the Subpoena.

## II.   THE RELEVANT FACTORS WEIGH AGAINST AWARDING ANY SUBPOENA-RELATED COSTS

Courts in this District examine several factors to determine whether to award attorney's fees and costs, including: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the expense than the requesting party; (3) whether the litigation is of public importance; (4) the scope of discovery and the extent to which the nonparty was required to separate responsive information from privileged or irrelevant material; and (5) the reasonableness of attorney's fees and costs of production incurred. *See, e.g.*, *in re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4 (D. Colo. May 24, 2012), *aff'd* 530 Fed. App'x 736 (10th Cir. 2013); *Crandall v. City & Cnty. of Denver, Colo.*, 2007 WL 162743, at *1 (D. Colo. Jan. 17, 2007). Impact bears the burden of establishing "the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted." *Michael Wilson*, 2012 WL 1901217, at *4.

Impact does not even attempt to apply all five factors. (*See generally* Mot. (ECF 30).) Regardless, they weigh in TAIC's favor and against even a partial cost-shifting award.

First, Impact does not clearly articulate whether it is an interested party, although it seems to acknowledge it may be. (*See id.* at 8-9.) And it unquestionably is. Impact is entitled to recover 15% of any amount Plaintiff recovers in this lawsuit. (*See* Exh. A (Contract) at TAIC_009675 ¶ 2(a).) Notably this fee is not limited to benefits awarded under the policy contract, but instead

6

includes any bad faith or statutory damages awarded. (*See id.* (entitling Impact to 15% of any judgment).) And as Plaintiff's counsel recently represented, Plaintiff had virtually no knowledge of or involvement in presenting the claim; it hired Impact to conduct virtually all claim-related activities on its behalf. Impact is undoubtedly interested in the outcome of this litigation, and its interest is wholly aligned with and wholly dependent on Plaintiff's. This factor therefore weighs against a cost-shifting award. *See Michael Wilson*, 2012 WL 1901217, at *4 (parties are interested when they have "a stake in the outcome of the . . . litigation").

Second, it is disingenuous for Impact to contend that TAIC can more readily bear Subpoena-related costs, and Impact provides only argument of counsel—not evidence—in support. (*See id.* at 9-10.) What is established by evidence actually before the Court is that: (1) Impact is Plaintiff's public adjuster; (2) Impact takes 15% of whatever funds Plaintiff receives from TAIC; and (3) Impact has already been paid over $331,000 by Plaintiff for its work on this case. As noted above, Impact's estimated costs—between $5,000 and $15,000—pale in comparison to what it has already been paid—over $331,000. And as more fully set forth above, Impact has already been paid for its Subpoena-related work because the Contract provides that its services include "litigation assistance." (*See* Exh. A (Contract) at TAIC_009675 ¶ 1.)

Impact also improperly and incorrectly argues that it "is a potential target for [TAIC] and other insurance company subpoenas in the future." (Mot. (ECF 30) at 10.) As an initial matter, it is not improper for an insurance company to seek relevant discovery from a third party public adjuster with relevant knowledge who presented a claim that resulted in litigation, particularly when the insured disclaims virtually all knowledge of the claim and hired the public adjuster to handle the claim in its entirety. Even if it were, this argument does not address whether Impact

7

can readily bear Subpoena-related costs. It most certainly can from the over $331,000 it was already paid for its "litigation assistance" and other work on the claim. The second factor therefore also weighs against a cost-shifting award. *See Michael Wilson*, 2012 WL 1901217 at *4-*5 (absence of evidence as to ability to bear expense weighs against cost-shifting).

TAIC acknowledges that this matter is a purely private dispute that does not implicate any public interest such that the third factor weighs in favor of cost-shifting. *See id.* at *5.

As to the fourth factor, Impact does not address it directly but argues only that it needs to spend some time reviewing potentially responsive documents to determine if any protective doctrines might be implicated. (*See* Mot. (ECF 30) at 6.) But Impact has not yet responded to the Subpoena, nor has it even provided a log of any items that it will withhold. Impact has therefore failed to carry its burden with respect to this factor, and it therefore weighs against a cost-shifting award. *See Michael Wilson*, 2012 WL 1901217, at *5 (failure "to demonstrate that the fees or costs incurred here were related to the scope of the subpoenas and the need to segregate irrelevant and privileged information" weighs against cost-shifting).

Finally, the Court also does not have before it information sufficient to assess the fifth factor: whether the costs incurred were reasonable. Impact estimates only that its Subpoena-related costs will fall within the range of $5,000 to $15,000 and represents that it will provide "a supplementary affidavit of attorney fees and costs once its entitlement to such recovery is determined." (Mot. (ECF 30) at 7.) Impact has therefore also failed to carry its burden as to this factor, and it also weighs against a cost-shifting award. *See Michael Wilson*, 2012 WL 1901217, at * 4 (the party seeking reimbursement has "the burden of establishing the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted. . . .").

In sum, four of the relevant factors weigh against a cost-shifting award, and only one weighs in favor of a cost-shifting award. Under the full analysis of all relevant factors, therefore, Impact is not entitled to an award of any of its Subpoena-related costs.

**III.     TAIC DID UNDERTAKE STEPS TO AVOID UNDUE BURDEN**

It was reasonable for TAIC's counsel to attempt to negotiate a more reasonable response deadline than the roughly four month extension proposed by Impact's counsel, particularly when that deadline would impair TAIC's ability to complete fact discovery by the Court-ordered deadline. (*See id.* at 10.) A four month extension is extraordinary. Undersigned counsel cannot recall any third party subpoena recipients—including several others in this case, some of which have similarly large files and none of which sought to shift costs to the serving party—having ever requested over four months to respond, including to highly burdensome subpoenas. Regardless, TAIC welcomed additional conferral to ensure a deadline that balanced the parties' and Impact's interests. Impact refused and insisted on a December 5, 2022, response deadline. Impact's foot-dragging in filing the Motion has ensured it will prevail on this issue.[1]

Under these circumstances, awarding Impact its costs does little more than reward its dilatory conduct, particularly when the relevant factors weigh strongly against such an award (as more fully set forth above).

**IV.     ALTERNATIVELY, ADDITIONAL CONFERRAL IS NEEDED AS TO WHAT COSTS IMPACT REASONABLY INCURRED IN RESPONDING TO THE SUBPOENA**

In the event the Court determines that a cost-shifting award is appropriate, Impact's

---

[1] TAIC may seek further Court intervention in the event Impact does not provide a complete and fulsome response to the Subpoena by December 5, 2022.

9

request for an award of 2/3 of its Subpoena-related costs ignores that only *reasonable* costs are recoverable. *See, e.g.*, *Michael Wilson*, 2012 WL 1901217, at *4. But as Impact acknowledges, it has not even determined what those costs are. (*See* Mot. (ECF 30) at 6-7.) Without evidence of the costs sought, it is impossible for the Court—or TAIC—to assess their reasonableness.

If the Court is inclined to enter a cost-shifting award, therefore, it should order Impact and TAIC to confer further regarding the amount and reasonableness of costs and submit any remaining disputes for resolution only after Impact states with certainty and itemizes each of the Subpoena-related costs it seeks to recover.

## CONCLUSION

For these reasons, TAIC respectfully requests that the Court deny the Motion.

DATED: December 1, 2022

                                                     */s/ Nathaniel Scott Barker*
Terence M. Ridley
Evan Stephenson
Nathaniel Scott Barker
Spencer Fane, LLP
1700 Sherman Street, Suite 2000
Denver, CO 80203
Phone: 303.839.3800
Fax: 303.839.3838
Email: tridley@spencerfane.com
estephenson@spencerfane.com
nbarker@spencerfane.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2022, I filed the foregoing **DEFENDANT'S RESPONSE TO THIRD PARTY IMPACT CLAIM SERVICES, LLC'S MOTION TO QUASH OR MODIFY SUBPOENA** via the CF/ECF Filing System, which caused service to be made on the following:

Christopher N. Mammel
Merlin Law Group, P.A.
1001 17th Street, Suite 1150
Denver, CO 80202
Phone: 720.665.9680
Fax: 720.665.9681
Email: cmammel@merlinlawgroup.com
*Attorney for Plaintiff*

I FURTHER CERTIFY that on December 1, 2022, I served the foregoing **DEFENDANT'S RESPONSE TO THIRD PARTY IMPACT CLAIM SERVICES, llc'S MOTION TO QUASH OR MODIFY SUBPOENA** on the following via email:

Colin E. Moriarty
Underhill Law, P.C.
7350 East Progress Place, Suite 110
Greenwood Village, CO 8011
Phone: 303.721.7112
Email: colin@underhilllaw.com

*s/ Nathaniel Scott Barker*
Nathaniel Scott Barker