IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00870-DDD-NRN

PRAIRIE WALK CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY, a corporation,

Defendant.

**ORDER ON THIRD PARTY IMPACT CLAIM SERVICES, LLC'S MOTION TO QUASH
(Dkt. #30)**

**N. Reid Neureiter
United States Magistrate Judge**

Before the Court is third-party Impact Claims Services, LLC's ("Impact") Motion to Quash or Modify Subpoena (Dkt. #30), which was referred by Judge Daniel D. Domenico. Dkt. #31. Impact has already produced the documents requested in the subpeona, so this is effectively a motion to require Defendant The American Insurance Company ("American") to pay a portion of the costs of responding. Per a Supplement to the Motion to Quash or Modify Subpoena (Dkt. #35), Impact asserts that it incurred $15,476.00 in expenses (including legal expenses) in responding to the subpoena.

**Background**

This is complicated insurance dispute arising from a hailstorm that damaged the Plaintiff Condominium Association's property in July 2018. American has paid more than $2 million on the claim. But the Condominium Association alleges that American's investigation and adjustment of the claim was inadequate. The Condominium

1

Association asserts that its damages exceed $9 million based on bids for repairs it has received.

On October 4, 2018, less than three months after the damaging hailstorm, the Condominium Association hired Impact to act as the Condominium Association's public adjuster with respect to the claim. In Impact's contract with the Condominium Association (Dkt. #33-1), Impact agreed to work on a contingency fee basis of fifteen percent of all funds paid by American "for any recoveries or settlements or from any and all proceeds from settlements and/or judgments which result from litigation pursued by Insured in excess of $0 ('Fee')." Dkt. #33-1 at 2. The contract provides that in the event of cancellation of the contract, Impact would be entitled to payment for any time spent on the claim (by any "licensed public adjuster, employee or staff member") at the rate of $375 per hour. *Id*.

Per the Contract, the "Services" to be provided by Impact to the Condominium Association include "providing any needed litigation assistance to Insured and its counsel." *Id*. The full description of the services laid out in Impact's contract is the following:

> Consultant's services may include, but may not be limited to the: preparation and presentation of the Claim; documentation of the damages and losses, coordinating and communicating with necessary experts or professionals for preparation of such documentation, presentation of any required claim form of "Sworn Statement in Proof of Loss," and any other measures deemed necessary by Consultant to settle or otherwise resolve the Claim on behalf of the Insured. Such resolution or settlements may include, but are not limited to claims adjustment, mediation, appraisal, arbitration, lawsuit settlements, lawsuit awards, or combination thereof ("Settlements"). The Services will include the preparation and presentation of the Claim, which may include, but is not necessarily limited to, the following: Documentation of the loss or losses; use of Xactimate to derive material replacement costs and any other costs or expenses which can be determined by that program; coordination and communication with the

> Insured, needed and engaged experts, specialists, attorneys and other involved professionals; presentation of any claim form or "Sworn Statement in Proof of Loss" required by any insurer; and, any other measures deemed necessary by Impact Claim Services to settle or resolve the Claim on behalf of the Insured.

*Id*. Because American has already paid the Condominium Association more than $2.2 million, Impact presumably has already received more than $330,000 under its contingency fee agreement—in part for the service of "providing any needed litigation assistance." As public adjuster for the Condominium Association, Impact conducted virtually all claim activities on the Condominium Association's behalf and representatives of the Condominium Association have disclaimed virtually any direct knowledge of those activities.

American's counsel issued a subpoena to Impact on July 26, 2022, seeking a variety of documents related to the insurance claim. The subpoena issued to Impact seeks, among other things (in words or substance), Impact's entire file related to the claim and the subject property; communications related to the claim, the property, or the subject litigation; communications with the Condominium Association's legal counsel; documents reflecting Impact's compensation; and any contracts entered into with the Condominium Association.

Impact argues that it is a third party in this lawsuit and, under Rule 45(d)(1) and Rule 45(d)(2)(B), the Court has an obligation to protect a third party from significant expense associated with complying with a subpoena. Such protection would include, in Impact's view, requiring American to pay at least two thirds of the cost of responding to the subpoena, or approximately $10,307.36.

Impact complains that the subpoena requests the production of not just "its public adjuster file," but also "requires [Impact] to comb through all of its paper and electronic records and produce . . . all correspondence or other documents related to the parties in this case or the claim." Dkt. #30 at 1. Impact says this has required Impact, a small company, to "dedicate time to locating and collecting those documents and then reviewing them for all possible privilege or confidentiality prior to disclosure." *Id*.

Reviewing the "payment invoice" and other documentation purporting to justify the requested expenses, the documentation reflects, among other things, $10,500 for 29 hours of work by Impact, billed at $375 per hour. Tasks involved include 8.0 hours producing the Impact Claims Services adjusting file ($3,000); 16.25 hours identifying, compiling and converting to PDF emails that were not part of the Impact Claims Services adjusting file ($6,093.75); with the remaining hours spent communicating with counsel or reviewing emails from counsel regarding the subpoena and the production. *See* Dkt. #35-1. Added to the claimed expense is $4,920 in attorneys and paralegal fees. The attorney was billed out at $350 per hour and the paralegal appears to have been billed out at $150 per hour. *See* Dkt. #35 and Ex. 1–5.

**Legal Standard**

Fed. R. Civ. P. 45(d)(1) provides that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(2)(B) states that "an order to compel production shall protect any person who is not a party or an officer from significant expense resulting from the inspection and copying commanded." Impact argues that this provision is understood to allow third parties subject to a subpoena to recover the reasonable costs and expenses

4

they incur in responding to the subpoena from the party issuing the subpoena. The Tenth Circuit has indicated that the analysis should focus on whether the third party faces a "significant expense," not whether the third party faces an "undue burden." *See Rhea v. Apache Corporation*, 833 Fed.Appx. 186, 191 (10th Cir. 2020). "Under [Rule 45(d)(2)(B)(ii)], the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.' " *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (quoted in *Rhea v Apache Corporation*, 833 Fed. Appx. at 191.

Although Rule 45(c)(2)(B)(ii) is intended to protect a nonparty subpoena respondent from "significant expense," any such expense, including attorney's fees, must be reasonable. *See In re Application of Michael Wilson & Partners, Ltd.*, 520 Fed. Appx. 736, 738 (10th Cir. 2013); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 n. 9 (9th Cir. 1982) (listing "reasonableness of the costs of production" among the factors a court can consider when deciding whether to award a nonparty its costs in responding to subpoena).

Various factors are used in the calculus under Rule 45 to determine whether and to what extent attorneys' fees and costs should be shifted from the person responding to the subpoena to the party seeking discovery. These include: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party; (3) whether the litigation is of public importance; (4) the invasiveness of the request; (4) the extent to which the

5

producing party must separate responsive information from privileged or irrelevant material, and (5) (as noted above) the reasonableness of the costs of production. *In re Application of Michael Wilson and Partners, Ltd.*, 2012 WL 1901217, at *3 (D. Colo. 2012), *aff'd* 520 Fed. Appx. 736 (10th Cir. 2013).

Multiple courts have commented that the putative non-party's interest in the litigation outcome is an important consideration in the cost shifting. This is fair because participating in litigation necessarily has certain costs and a party, or non-party with discoverable evidence and a financial interest in the outcome, should expect to incur some costs as they see the litigation through, as they will presumably ultimately benefit from that work. *See In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623 (10th Cir. 1982) (the fact that a non-party is performing work that could not inure to its benefit, as opposed to a party that would benefit from the work, is a factor to be considered); *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) ("Under the caselaw, it is relevant to inquire whether the putative non-party actually has an interest in the outcome of the case . . . .").

To this list, the Court adds another consideration: which party (or non-party) is in the best position to efficiently maintain relevant discoverable records in a manner to minimize the cost of production. Where documents or files are almost certain to be requested in litigation, and the party who created those documents is a repeat player in the litigation game, then that party should make a concerted effort, from the very beginning of any involvement in a claim or dispute, to maintain those documents so that they can be efficiently searched and produced.

As precedent for requiring American to pay a substantial part of the cost of responding to the subpoena, Impact cites an opinion by Judge Krieger overruling an objection to a decision by Magistrate Judge Hegarty in a similar situation. Judge Hegarty's decision required the insurer to pay $6,500 as a reasonable expense for the public adjuster having to respond to a similar subpoena. *See Hiland Hills Townhouse Owners Assoc. v. Owners Ins. Company*, No. 17-cv-01773-MSK-MEH (Opinion and Order Overruling Objections), (D. Colo., Sept. 21, 2021). Judge Hegarty's Order in that case recited that, after a discovery hearing, "the Court has determined that $6,500.00 is a reasonable expense and should be paid by Defendant within thirty days of the date of this text entry. This is based on approximately one-third of claimed legal expenses (which were not itemized or verified) incurred in protecting [Impact's] legitimate business interest, and two-thirds of [Impact's] asserted actual cost in assembling the responsive documents, and amount adjusted to a reasonable hourly rate." *Id*. at 2 (citing Discovery Order, Dkt. #75).

While Magistrate Judge Hegarty did award some fees and costs to the public adjuster in the *Hiland Hills* case, there was no detailed explanation for why he did so, and there is no explanation for how, if at all, the *Hiland Hills'* public adjuster's financial interest in the outcome of the case was incorporated into the analysis.

**Decision**

Based on the facts as presented and the legal principles outlined above, I conclude that Impact should bear the majority of the claimed expenses associated with responding to American's subpoena. I reach this conclusion for the following reasons.

First, Impact is obviously an interested party that stands to benefit from the litigation at issue. As a public adjuster working on a contingency fee contract that explicitly calls for Impact to provide litigation assistance in connection with any lawsuit, it should be expected and presumed that Impact would be called on to provide its claim adjustment file and any supporting documents. In other words, spending some amount of time responding to document requests associated with the underlying insurance claim is part of what Impact signed up for. And if the litigation is successful, Impact will be compensated for its efforts. Impact is not some uninterested third party being forced to spend time, money, and resources to produce documents in a litigation in which it is entirely uninvolved.

Second, because it should be expected that Impact's records and files would be requested in litigation, Impact should have created and maintained these materials in an efficient way with the full expectation that they would be produced in the litigation. Impact is in the best position to create and maintain its claim adjustment file in an efficient manner, so as to facilitate inexpensive retrieval, compilation, review and production. The suggestion that the subpoena calls for documents unrelated to either the litigation or the claim does not withstand scrutiny. This is a long way of saying that Impact should not have taken more than 24 working hours to retrieve and produce the claim adjustment file and associated correspondence or communications. Knowing from the beginning that these documents were likely to be requested, Impact should have systems in place for all its claims to make document retrieval simple and inexpensive.

Third, Impact's claim that it should be compensated at the rate of $375 per hour is unreasonable. Impact has provided no support justifying the $375 per hour figure nor

suggested that anyone actually pays Impact $375 per hour to produce documents from its files. The $375 hourly rate comes from Impact's own public adjuster contract as a figure a client would have to pay if the client were to terminate the contract. This rate even exceeds the rate that Impact's lawyer charges, which is $350 per hour. Paralegal services by Impact's counsel are billed at $150 per hour. The very affidavit of Perin Investigations, which Impact submitted to support Impact's claim to costs and expenses, indicates that the average cost per hour of project management support for eDiscovery is in the range of $100 to $200 per hour. *See* Dkt. #30-5 at 5.  Moreover, the tasks listed in Dkt. #35-1, Impact's "Payment Invoice," require little to no professional judgment and are more like administerial and paralegal tasks which, at most, should be compensated at the rate of $150/ per hour. Again, because it was entirely predictable that these files, records, and communications would be sought in this litigation, they should have been maintained from the beginning in a manner that facilitate retrieval by a paralegal or administrative assistant.

      Fourth, I do not find that if a reasonable hourly rate were used, and a reasonable amount of time were spent retrieving efficiently stored files and communications, that the burden on Impact of responding to the subpoena would be significant. This is especially so, given the scope of this claim and the fact that Impact has already been paid more than $300,000. A reasonable amount of time would be, perhaps, 10 hours, at a reasonable paralegal rate of $150 per hour. This conclusion is further supported by the American's supplemental submission (Dkt. #37), where it is explained that of the 74,575 pages of documents produced by Impact, fully 55,500 of those produced documents consisted of pleadings and documents produced by parties and other third-

party subpoena recipients in this case. The Court agrees that Impact did not need to spend any time reviewing those 55,500 pages of documents to determine if they might be potentially privileged because either they are not Plaintiff's or Impact's document, or Plaintiff did not assert any privileges with respect to the documents it produced, or both.

For the forgoing reasons, and consistent with Rule 45, I believe it is appropriate to require Defendant American to compensate Impact for the burden of responding to the subpoena in the amount of $1,500. This would compensate American for 10 hours of document production and review at a reasonable paralegal/administrative rate of $150 per hour. I do not believe that Impact should be entitled to compensation for attorneys' fees expended in in opposing the subpoena, in large part because most of the arguments were unsuccessful and, had Impact taken a more reasonable position from the beginning, there would have been no need for the expenditure of legal fees.

Therefore, it is **ORDERED** that Third Party Impact Claim Service's Motion to Quash (Dkt. #30) is **GRANTED IN PART AND DENIED IN PART** as follows: Defendant American shall pay Impact the sum of $1,500 to pay for a portion of the expenses associated with responding to the disputed subpoena.

Date: December 30, 2022

_____
N. Reid Neureiter
United States Magistrate Judge