IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00870-DDD-KAS

PRAIRIE WALK CONDOMINIUM ASSOCIATION,

   Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY, a corporation,

   Defendant.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Amend Affirmative Defenses and Add Counterclaims For Declaratory Judgments** [#77] (the "Motion"). Plaintiff filed a Response [#84] in opposition to the Motion [#77], and Defendant filed a Reply [#89]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the following reasons, the Motion [#77] is **GRANTED**.[1]

## I. Background

**A.   The Loss**

This insurance coverage dispute arises from a July 16, 2018 hailstorm which damaged several commercial residential buildings (the "Buildings") located in Parker, Colorado, and managed by Plaintiff Prairie Walk Condominium Association. *See Compl.*

---

[1] "Courts in this circuit have found that a magistrate judge's ruling on a motion to amend is nondispositive 'particularly where the magistrate judge's order grants leave to amend and does not have the effect of removing any claim or defense.'" *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 16-cv-2946-WJM-NYW, 2018 WL 1755784, at *1 (D. Colo. Apr. 12, 2018) (quoting *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002)).

[#3], ¶¶ 3, 13. At that time, the Buildings were insured by Defendant The American Insurance Company under a commercial all risk businessowners insurance policy (the "Policy"). *Id.*, ¶ 8. After the loss, Plaintiffs retained a public adjuster, Derek O'Driscoll ("O'Driscoll"), of Impact Claim Services, LLC ("Impact"), who reported the loss to Defendant. *Motion* [#77] at 3. Defendant made undisputed payments of approximately $2.2 million under the Policy.[2] On February 15, 2021, Impact, on behalf of Plaintiff, sent Defendant a claim demand letter, with estimates ranging from $9,948,088.00 to $14,000,861.00. *See O'Driscoll Letter* [#77-3] at 40. Impact estimated "an actual value amount of $10,774,948.98" and requested $7,522,917.27 from Defendant in "net claim amount." *Id.* at 41.

**B.     The Policy**

Defendant alleges that the Policy "expressly excludes coverage for property damage caused directly or indirectly by—among other things—the insured's delay, wear and tear, or deterioration." *Prop. Am. Answer and Counterclaims* [#77-1], Counterclaims ¶ 14. The Policy distinguishes between replacement cost and actual cash value ("ACV"). *Id.*, ¶¶ 16-19. The replacement cost provisions require Defendant to pay the least of: (1) the Policy's applicable coverage limit; (2) the cost to replace the lost or damaged property with other property of comparable material and quality and used for the same purpose; or (3) the amount the insured actually spends that is necessary to repair or replace the lost or damaged property. *Id.*, ¶ 16. On the other hand, ACV is "the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like

---

[2] The Complaint alleges "undisputed payments totaling $2,201,139.71," while the Motion [#77] asserts that Defendant paid "actual-cash-value benefits totaling $2,210,339.71." *Compare Compl.* [#3], ¶ 30, *with Motion* [#77] at 3. This minor discrepancy does not affect the Court's analysis.

2

kind and quality, subject to a deduction for physical deterioration, depreciation, and obsolescence." *Id.*, ¶ 17. Notably, Defendant must pay replacement cost benefits (less deductible) only after the lost or damage property is actually repaired or replaced, and only if the repairs or replacement are made "as soon as reasonably possible after the loss or damage." *Id.*, ¶ 18. Otherwise, Defendant must pay the lesser of the applicable coverage limits or the ACV. *Id.*, ¶ 19.

The Policy also contains a "Colorado Changes – Concealment, Misrepresentation or Fraud" endorsement, which (if applicable) bars the insured from recovering any benefits or claimed damages exceeding amounts Defendant has already paid. *Id.*, Affirmative Defenses ¶ 8.

**C.   Proposed Amendments**

Defendant filed the Motion [#77], along with a red-lined Proposed Amended Answer and Counterclaims [#77-1], on February 22, 2024. Defendant alleges that Impact's estimate, submitted on behalf of Plaintiff, falsely relied on bids using January 2021 pricing rather than pricing from the time of loss, i.e., July 2018. *Prop. Am. Answer and Counterclaims* [#77-1], Counterclaims ¶¶ 25-27. Defendant alleges that under Plaintiff's governing documents, Plaintiff is responsible for maintenance and repair of common areas (such as roofs), and that it has the authority to levy assessments for that purpose when insurance payments are insufficient. *Id.*, ¶¶ 28-45.

Defendant alleges that Plaintiff did not promptly repair or replace elements of the Buildings that were damaged in the July 2018 hailstorm. *Id.*, ¶ 53. Defendant alleges that Plaintiff has not used the $2.2 million in received ACV benefits to repair or reconstruct the damaged Buildings. *Id.*, ¶ 56. Nor has Plaintiff levied any assessments to address the

3

allegedly insufficient insurance benefits it has received. *Id.*, ¶ 57. Defendant further alleges that Plaintiff's decisions not to perform permanent repairs and not to levy assessments for purposes of repairs were made on the advice of O'Driscoll. *Id.*, ¶ 62.

Defendant alleges that during discovery, it learned that the Buildings have suffered additional damage since July 2018 from subsequent hailstorms. *Id.*, ¶ 67. Plaintiffs are seeking an additional $327,796 from Defendant for "temporary repairs" to seal the roofs. *Id.*, ¶ 68. However, Defendant alleges that there would be no need for "temporary repairs" due to additional damage had Plaintiff promptly conducted the necessary permanent repairs. *Id.*, ¶ 70. Plaintiff has also made a claim to another insurer for May 2023 hail damage to structures that include the same Buildings covered by Defendant's policy. *Id.*, ¶ 73. Defendant learned through discovery that there are fourteen structures that are the subject of the May 2023 hail claim, of which thirteen are at issue in the July 2018 claim. *Id.*, ¶ 76.

Defendant raises three declaratory judgment counterclaims: (1) a declaratory judgment that it is not obligated to pay any additional benefits for "temporary repairs"; (2) a declaratory judgment that it is not obligated to pay any additional benefits to Plaintiff due to Plaintiff's failure to conduct repairs within a reasonable time after the July 2018 storm; and (3) a declaratory judgment that it is only obligated to pay actual cash value based on pricing at or around the time of the Loss. *Id.*, ¶ 78-111. Defendant also seeks to amend its affirmative defenses. It seeks to clarify its assertion of failure of a condition precedent to coverage to include allegations of Plaintiff "delaying submitting the requested Sworn Proof of Loss, resisting and delaying responding to [Defendant's] requests for information material to the claim, and improperly attempting to impose

conditions on inspections and testing [Defendant] required" as well as failing to "mitigate damages by . . . failing to perform covered repairs within a reasonable time after loss and permitting further damage to the property." *Id.*, Affirmative Defenses ¶ 1. Defendant seeks to add affirmative defenses including that Plaintiff's claims are barred by Plaintiff's own delays; that Plaintiff's bad faith and statutory claims are barred because Plaintiff's claim is or was fairly debatable; and that Plaintiff's claims are barred due to "its and its agents['] knowing and deliberate concealment of and misrepresentations regarding material facts and fraud with respect to presenting its claim to [Defendant]". *Id.*, ¶¶ 2, 6, 8.

Defendant's concealment and fraud affirmative defense specifically alleges that Plaintiff and Impact: (a) concealed material information that they knew would undermine their claim evaluation (including information about costs of construction in July 2018 and a contractor estimate that O'Driscoll received in response to his request for bids); (b) improperly attempted to inflate Plaintiff's claim to obtain a double recovery of benefits as to the "temporary repairs" which are not covered because Defendant already paid ACV benefits for permanent repairs; (c) concealed a cost of repair estimate that was much closer to Defendant's cost of repair estimate because it undermined O'Driscoll's and Impact's demand on Plaintiff's behalf; (d) concealed subsequent damage to the Buildings for which Plaintiff seeks to recover from Defendant; (e) falsely represented in discovery responses that only four buildings were the subject of both July 2018 and May 2023 hailstorm claims when in fact thirteen of the Buildings were the subject of both claims; (f) have a financial incentive to artificially inflate Plaintiff's claims and knowingly and deliberately did so by falsely representing the scope and cost of necessary repairs; and (g) knowingly, intentionally, and deliberately engaged in this conduct in order to obtain

5

claim-related benefits to which they knew Plaintiff was not entitled. *Id.*, ¶ 8(a)-(g). Defendant alleges that this conduct was material to Defendant's claim evaluation and breached the Policy by violating its concealment, misrepresentation or fraud endorsement; violating the duty to cooperate; and violating the duty of good faith and fair dealing. *Id.*, ¶ 8.

**D.     The Tuccio Email [#77-5] and the RE Proposal [#77-6]**

On December 5, 2022, Defendant received nearly 75,000 pages of documents from Impact in response to a subpoena, which included an August 9, 2021 email from O'Driscoll to Natalie Tuccio at Reconstruction Experts ("RE") regarding a pre-suit estimate O'Driscoll received from RE, which was a fraction of the amount Plaintiff, through O'Driscoll, had demanded. *Motion* [#77] at 4; *Response* [#84] at 6 (stating that Defendant received documents from Impact in 2022). In response to RE's estimate, O'Driscoll wrote, in pertinent part:

> Dear Ms. Tuccio,
>
> While I appreciate the effort, it is clear that we have a significant disconnect between the actual scope of work as outlined in the Request for Proposal ("RFP") and the estimate generated by you all. The provided estimate does not comply with the scope of work detailed in the RFP and unfortunately therefore it must be rejected.
>
> From what I can discern it appears that RE's estimate as proposed is for very limited scope of repairs being performed from the perspective of a sub-contractor NOT as the general contractor for the project. This is not what the RFP outlined as the scope of work.

*Tuccio Email* [#77-5] at 1.

Although this email was disclosed in December 2022 in response to a subpoena, Defendant represents that it did not receive the actual RE Proposal [#77-6] until January 18, 2024. *Motion* [#77] at 4. RE's proposal totals $1,694,378.39 in repairs for 12 buildings,

6

a clubhouse, multiple garages/carports, supervision, and miscellaneous site repairs. *RE Proposal* [#77-6] at 3.

## II. Legal Standard

### A.     Rule 16(b)(4)

The parties do not dispute that the Motion [#77] was filed after the Scheduling Order [#24] deadline for joinder of parties and amendment of pleadings. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a party seeking to modify a Scheduling Order must show good cause and obtain the judge's consent). The good cause requirement applies to proposed counterclaims as well. *Id.* at 1241 (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990)).

In practice, good cause under Rule 16(b)(4) "requires the movant to show the scheduling deadlines cannot be met despite . . . diligent efforts" and "may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd.*, 771 F.3d at 1240); *Pumpco, Inc.*, 204 F.R.D. at 668-69 (finding good cause where "a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend"). However, if the party knew of the underlying conduct but simply failed to raise a claim or affirmative defense, the claims will be barred. *Gorsuch, Ltd.*, 771 F.3d at 1240 (citations omitted). If a party fails to establish

good cause, a court need not also consider whether Rule 15 is satisfied. *Id.*; *see also Birch*, 812 F.3d at 1248-49.

**B.     Rule 15(a)**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with the purpose of Rule 15, which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

However, "[l]ateness does not of itself justify the denial of amendment." *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975). In this Circuit, the undue delay analysis "focuses primarily on the reasons for the delay" and denial of leave is appropriate where a party has no adequate explanation for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (collecting cases).

Undue prejudice is the most important factor, but "[c]ourts typically find prejudice only when the amendment unfairly affects the [non-movants] 'in terms of preparing their defense to the amendment,'" such as where the amended claims arise from a different

8

subject matter from that previously set forth in the prior pleading. *Id.* at 1208 (citing *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)); *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (acknowledging that "any amendment invariably causes some 'practical prejudice'" but noting that "undue prejudice means that the amendment would 'work an injustice to the [opposing party]'") (quoting *Carefusion 213, LLC v. Pro. Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010)).

### III. Analysis

Defendant moves to amend its affirmative defenses and to plead counterclaims based on "recently revealed information." *Motion* [#77] at 1; *see generally Prop. Am. Answer & Counterclaim* [#77-1] at 9-35 (red-lined additions). Specifically, it argues that in December 2022, in response to a subpoena, Impact (Plaintiff's retained public adjuster firm) disclosed nearly 75,000 pages of documents which included an email thread that referenced (but did not include) a cost of repair estimate from Reconstruction Experts ("RE"). *Motion* [#77] at 4; *Tuccio Email* [#77-5]. The actual RE Proposal [#77-6] was not produced until January 18, 2024, and it showed that RE had offered to perform repairs for $1,694,378.38—significantly less than Impact's previous $11,549,962.35 demand and even less than the approximately $2.2 million Defendant had already paid to date. *Motion* [#77] at 4-5, 8. Defendant argues that it only recently discovered that Plaintiff has not obtained any bids to perform repairs (other than those Impact obtained in late 2020), has not contracted to begin repairs, and has not begun any repairs—Plaintiff only began temporarily patching and sealing the Buildings' roofs in November 2023. *Id.* at 5. Finally, Defendant also argues that Plaintiff concealed that the same Buildings suffered

9

subsequent damage from a May 2023 storm, for which Plaintiff has submitted a property damage claim to another insurer. *Id.* at 8.

Plaintiff argues that no information has been recently revealed, and that Defendant was aware of sufficient information to amend its claims in this matter by December 2022, at the latest. *Response* [#84] at 1. It also argues that most of Defendant's proposed amendments merely elaborate on defenses already presented and that they are "surplusage." *Id.* at 2. Plaintiff argues that Defendant did not act diligently to amend and that no good cause exists. *Id.* at 5-9. Finally, Plaintiff argues that Defendant unduly delayed in seeking amendment, that it would be prejudiced by the need for additional discovery, and that the proposed counterclaims are "unnecessary and redundant." *Id.* at 9-10.

**A.    Good Cause**

The Court finds that Defendant has shown good cause to satisfy Rule 16(b)(4) because it learned new information, specifically the RE Proposal [#77-6], during discovery. *Gorsuch*, 771 F.3d at 1240. Plaintiff is correct that Defendant has long had at least *some* information in its possession which could support its suspicions of claim inflation, such as the Tuccio Email [#77-5], which it received in December 2022. *See Response* [#84] at 6; *Tuccio Email* [#77-5]. However, Defendant persuasively argues that it "may have known of Plaintiff's and O'Driscoll/Impact's claim inflation before litigation began . . . [but] Defendant only recently learned of material information that Plaintiff and O'Driscoll/Impact concealed pre-suit, most significantly including a bid for a small fraction of the demand O'Driscoll/Impact made on Plaintiff's behalf that Defendant received only a month ago and that O'Driscoll/Impact resisted producing in this litigation." *Motion* [#77]

10

at 10. The RE Proposal [#77-6] was disclosed on January 18, 2024, and this Motion [#77] was filed on February 22, 2024. *Id.* at 4.

Plaintiff argues that the Tuccio Email [#77-5] "makes clear that an incomplete estimate had been obtained in 2021, [and] that it was so incomplete and deficient as to be rejected." *Response* [#84] at 6. That is not exactly how the Court reads the email, but to the extent Plaintiff's characterization is correct, this *supports* Defendant's argument that disclosure of the RE Proposal [#77-6] was materially new information that justifies a finding of good cause. After all, if the email were simply O'Driscoll rejecting a plainly incomplete proposal from RE, that rejection by itself might have given Defendant no cause for concern and no basis to amend. Defendant persuasively argues that when the actual RE Proposal [#77-6] was finally disclosed, in which RE proposed repairs on more than a dozen buildings at a fraction of Impact's demanded cost, *that information* triggered the need to amend. *Reply* [#89] at 3. Now, Defendant can see the scope of repair RE considered.

The Court finds that the recent disclosure of the RE Proposal [#77-6] constitutes good cause for Defendant to seek extension of the amendment deadline. While the previously disclosed Tuccio Email [#77-5] indicated that O'Driscoll was displeased with RE's proposal, it did not indicate the nearly $10 million gap between Impact's proposal and RE's proposal, or that RE's proposal was less than even the insurer's own estimate. *See generally Tuccio Email* [#77-5]. Further, the email fails to elucidate what scope of repair RE had actually considered. *Id.* Even if the email might have raised some concerns, it included almost no information about the substance of RE's proposal.

11

Defendant cites two cases involving insurers that suspected claim inflation even before litigation but did not discover confirming material evidence until discovery and sought late leave to amend. *Motion* [#77] at 10-11 (citing *Dakota Station II Condo. Ass'n, Inc. v. Auto-Owners Ins. Co.*, No. 14-cv-2839-RM-NYW, 2015 WL 6591888 (D. Colo. Oct. 30, 2015)); *Reply* [#89] at 2-3 (citing *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 16-cv-02946-WJM-NYW, 2018 WL 1755784 (D. Colo. Apr. 12, 2018)). The Court finds both cases persuasive.

Here, as in *Dakota Station*, "even before the initiation of this lawsuit, [Defendant] was on notice of some facts that give rise to its proposed counterclaims" such as the fact that Impact's estimate had used 2021 pricing instead of July 2018 pricing. *Dakota Station*, 2015 WL 6591888, at *3; *Prop. Am. Answer and Counterclaims* [#77-1], Counterclaims ¶¶ 24-25 (alleging that Impact's estimate, which was submitted February 15, 2021, "falsely used an incorrect date of pricing for the actual cash value"). However, there is no evidence that Defendant knew, prior to December 5, 2022, that RE had submitted a proposal to Impact which was rejected, or that Defendant knew, prior to January 18, 2024, the substance of RE's proposal, upon which it relies to support its affirmative defense of concealment/fraud. *Cf. Dakota Station*, 2015 WL 6591888, at *4. This new information constitutes good cause to extend the Scheduling Order deadline.

In *Sunflower*, too, the court acknowledged that the insurer might have had sufficient information to plead counterclaims based on a prior statement by the insurer's cost-of-repair expert that the plaintiff's estimate was inflated. *Sunflower Condo. Ass'n*, 2018 WL 1755784, at *4. However, the court recognized that an attorney, in good faith, might make the judgment that the insurer needed more evidence before asserting those

12

counterclaims, and found "that [the] [d]efendant should not be penalized for its attorney's efforts to be conscientious about pleading standards." *Id.* at *4. The same is true here—Defendant had reason to suspect that Impact's estimate was inflated even before litigation, but allegations of concealment and misrepresentation are serious, and counsel should not be penalized for conscientiousness about pleading standards. *See Reply* [#89] at 2-3; *accord Sunflower Condo. Ass'n*, 2018 WL 1755784, at *4-*5.

Accordingly, the Court finds that Rule 16(b)(4) is satisfied. The January 18, 2024, disclosure of the RE Proposal provides good cause to permit Defendant to amend its pleading after the scheduling order deadline.[3]

**B.      Rule 15(a)(2)**

Defendant argues that Rule 15(a)'s general presumption in favor of allowing a party to amend its pleadings warrants leave to amend. *Motion* [#77] at 12 (citing *Sunflower Condo. Ass'n*, 2018 WL 1755784, at *4). Plaintiff responds that "the record reflects undue delay by [Defendant] in seeking leave to amend, and adding these additional defenses and counterclaims will lead to additional discovery and needs for expert opinions", and that "the amendments sought to allow assertion of counterclaims for declaratory relief are unnecessary and redundant, since affirmative defenses already have been asserted to obtain the same relief." *Response* [#84] at 9, 10 (citing *Peterson v. USAA Life Ins. Co.*, No. 17-cv-01514, 2017 WL 10619943 (D. Colo. Dec. 27, 2017)).

---

[3] Because the RE Proposal [#77-6] alone provides good cause to modify the deadline for amendment of pleadings, the Court need not also consider whether other late discoveries support late amendment. *See, e.g., Reply* [#89] at 5-7 (arguing that Defendant also only recently discovered that Plaintiff "concealed subsequent damage to the Buildings and an insurance claim related to the Buildings' roofs"); *Motion* [#77] at 8 (alleging that Defendant's recent discovery of Plaintiff's refusal to undertake covered repairs gives rise to new counterclaims.

The Court agrees that some of Defendant's proposed amendments are "unnecessary and redundant" in that they are duplicative of its already asserted defenses or simply point to limitations already found in the Policy. *Response* [#84] at 10, 8 (arguing that "[t]here is no need to amend to make clear that the Policy only covers what it covers"). For example, Counterclaim II seeks a declaratory judgment that Defendant does not owe any additional benefits due to Plaintiff's failure to complete repairs within a reasonable time after the loss. *Prop. Am. Answer and Counterclaims* [#77-1], Counterclaims ¶¶ 90-100. Yet Defendant had already alleged that Plaintiff is not entitled to recover withheld depreciation because Plaintiff did not perform covered repairs within a reasonable time after the loss. *Id.*, Affirmative Defenses ¶ 7. Similarly, Counterclaim III seeks a declaratory judgment that Defendant is not obligated to pay ACV benefits based on any pricing other than July 2018 pricing. *Prop. Am. Answer and Counterclaims* [#77-1], Counterclaims ¶¶ 101-11. But the Policy already defines ACV as, "[T]he amount it would cost to repair or replace Covered Property, *at the time of loss or damage*[.]" *Id.* at ¶ 17 (emphasis added).

Nevertheless, if a party wishes to clarify allegations in its pleading to cover its bases, it may generally do so absent some other reason to deny leave.[4] Because redundancy is not, by itself, a permissible basis to deny amendment, this leaves Plaintiff's

---

[4] In support of its argument that amendment should be denied on the basis of redundancy, Plaintiff cites only to *Peterson v. USAA Life Ins. Co.*, No. 17-cv-01514-CMA-KMT, 2017 WL 10619943 (D. Colo. Dec. 27, 2017), *recommendation and report adopted*, 2018 WL 6429923 (D. Colo. Jan. 23, 2018). *See Response* [#84] at 10. However, *Peterson* is distinguishable: there, the insurer "concede[d] the redundancy between its counterclaims and affirmative defenses" but "request[ed] leave to amend its [a]nswer solely by supplementing its affirmative defenses." 2017 WL 10619943 at *3. While the court recommended denying leave to allege redundant *counterclaims* on the basis of futility, it recommended permitting amendment to allege redundant *affirmative defenses* which "merely clarifie[d] the defenses already stated" because there was no indication the insured "will be prejudiced by such an amendment." *Id.* The Court therefore does not read *Peterson* for the proposition that redundancy alone is a permissible basis to deny leave to amend.

two arguments under Rule 15(a)(2): undue delay and unfair prejudice caused by additional discovery. *Response* [#84] at 9.

1. **Undue Delay**

Plaintiff has not shown that the proposed amendments are unduly delayed. Defendant has offered a reasonable explanation for its delay: the facts upon which these amendments rely were not discovered until late 2023 or January 2024. *Motion* [#77] at 13. Regarding the concealment/misrepresentation affirmative defense, the Court has already found good cause for the late amendment based on the January 18, 2024 disclosure of the RE Proposal [#77-6]. As for the counterclaims, Defendant learned that Plaintiff had only begun temporary patching and sealing of the roofs in or around November 2023. *Id.* at 5 (citing *Dep. of Hastings* [#77-8] at 30:14-21, 31:25-32:3). Similarly, Defendant only recently learned that Plaintiff has not gotten any bids since the ones Impact collected in 2020, contracted to perform repairs, or begun repairs as of October 2023. *Id.* (citing *Dep. of Frazier* [#77-7] at 79:17-80:1; *Dep. of Hastings* [#77-8] at 24:2-6, 29:10-23). Plaintiff's Response [#84] fails to acknowledge these other late discoveries, and Plaintiff offers no reason for the Court to doubt Defendant's assertions about when it learned this other information. Plaintiff's vague statement that "[t]he record reflects undue delay" is insufficient, and the Court finds that Plaintiff has failed to demonstrate any undue delay in seeking amendment. *Response* [#84] at 9.

2. **Undue Prejudice**

Plaintiff also has not articulated any undue prejudice that would justify denying leave to amend. At the outset, Plaintiff's undue prejudice argument is undercut by its simultaneous argument that the proposed counterclaims are "unnecessary and

15

redundant." *See Response* [#84] at 9, 10. To the extent the counterclaims are unnecessary and redundant, they should have no effect on Plaintiff's handling of the case and cause no prejudice at all. *Cf. Minter*, 451 F.3d at 1208 (stating that courts typically find prejudice only when amendment would unfairly affect the opposing party in preparing their defense to the amendment). Specifically, the amended counterclaims should not require a single additional interrogatory or discovery request. Thus, Plaintiff fails to explain meaningfully why the counterclaims would require any additional discovery or expert opinions.

The Court acknowledges that unlike the potentially redundant counterclaims, allowing the proposed affirmative defense of concealment/misrepresentation will impose at least some prejudice on Plaintiff, and may result in some further discovery—however, not all prejudice is *undue* prejudice. *See, e.g.*, *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) ("While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to [the opposing party].") (internal quotation omitted).

Again, the Court looks to *Dakota Station* and *Sunflower*. In *Dakota Station*, the court noted that "any prejudice to Plaintiff due to its concerns regarding expansive additional discovery and associated costs can be addressed by the court through the limits of any further discovery and cost-shifting, if appropriate." *Dakota Station*, 2015 WL 6591888, at *4. And in *Sunflower*, the court found no undue prejudice based, in part, on the fact that the insured had known about the facts underlying the insurer's proposed concealment/fraud counterclaims. *Sunflower Condo. Ass'n*, 2018 WL 1755784, at *6. In both cases, the court granted the insurer leave to amend late to allege fraud or

16

concealment, based on newly discovered information. *Id.*, at *7; *Dakota Station*, 2015 WL 6591888, at *5.

Here, unfair surprise does not arise from the late amendment—Plaintiff (or at least its agent, O'Driscoll) has known about the facts underlying the concealment/misrepresentation affirmative defense since August 9, 2021, when O'Driscoll received and rejected the RE Proposal [#77-6]. *See Tuccio Email* [#77-5]. Moreover, the Court can address any concerns about the scope of discovery, and this is the only concrete example of prejudice Plaintiff offers. *Dakota Station*, 2015 WL 6591888, at *4; *Response* [#84] at 9. Thus, Plaintiff has not shown that the proposed amendment would cause undue prejudice.

Accordingly, the Court **grants** the Motion [#77]. However, Defendant will need to file a clean copy of its Amended Answer and Counterclaims. *See Proposed Amended Answer and Counterclaims* [#77-1] (red-lined).

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Defendant's Motion to Amend Affirmative Defenses and Add Counterclaims for Declaratory Judgments [#77] is **GRANTED**.

IT IS FURTHER **ORDERED** that on or before **July 5, 2024**, Defendant shall file a clean copy of the Proposed Amended Answer and Counterclaims [#77-1], with no red-lines.

Dated:  June 28, 2024                           BY THE COURT:

                                        Kathryn A. Starnella  
                                        United States Magistrate Judge